UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
ZACHARY GIAMBALVO,

                               Plaintiff,                          Case No.: 24 Civ. 6103

     -against-

                                                                 **VERIFIED COMPLAINT**

SUFFOLK COUNTY, New York, ROBERT
WARING, in his official capacity, MICHAEL
KOMOROWSKI, Individually,

                               Defendants.
-----------------------------------------------------------------x

      Plaintiff, ZACHARY GIAMBALVO, by his attorneys The Bellantoni Law Firm, PLLC, for his Complaint respectfully states:

## NATURE OF THE ACTION

      1.     This action seeks declaratory, injunctive, and other relief, to include nominal, compensatory, and punitive damages, costs, and reasonable statutory attorney's fees pursuant to 42 U.S.C. § 1988, for continuing irreparable harm to the plaintiffs arising from violations of his Second and Fourteenth Amendment rights accruing from the defendants' denial of his right to possess handguns for self-defense.

## JURISDICTION AND VENUE

      2.     Jurisdiction in this court is proper pursuant to 28 U.S.C. § 1331 in that this action arises under the United States Constitution and laws of the United States, and under 28 U.S.C. § 1343(a)(3) in that this action seeks to redress the deprivation, under of color of the laws, statutes, ordinances, regulations, customs, and usages of the State of New York, of rights, privileges or immunities secured by the United States Constitution. This action also seeks relief pursuant to 28 U.S.C. §§ 2201, 2202, and 42 U.S.C. § 1983, § 1988. Venue in this district is proper pursuant to 28 U.S.C. § 1391.

1

## THE PARTIES

3. Plaintiff ZACHARY GIAMBALVO (hereinafter "Mr. Giambalvo") is a citizen of the United States and a resident of Suffolk County, State of New York within the jurisdiction of the Suffolk County Police Department.

4. Defendant ROBERT WARING ("Waring"), sued in his official capacity only, is the police commissioner for the Suffolk County Police Department and, as such, is the statutory firearm licensing officer for that jurisdiction of Suffolk County identified in Penal Law § 265.00(10). As a statutory licensing officer, the SCPD police commissioner is statutorily authorized to issue, deny, suspend, and/or revoke licenses issued pursuant to Penal Law § 400.00, *et seq*.

5. Defendant MICHAEL KOMOROWSKI ("Komorowski"), sued in his individual capacity only, is employed by Suffolk County in the Suffolk County Police Department (SCPD) as the Lieutenant of the Licensing Bureau.

6. At all times relevant herein, Komorowski had authority delegated to him by the SCPD police commissioner to render final determinations on applications for licenses issued under Penal Law § 400.00*, et seq*.

7. Komorowski denied Mr. Giambalvo's application for a New York State pistol license.

## CONSTITUTIONAL FRAMEWORK

8. The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II.

9. The Second Amendment codifies a "preexisting right."

> "[I]t has always been widely understood that the Second Amendment, like the First and Fourth Amendments, codified a *pre-existing* right.
>
> The very text of the Second Amendment implicitly recognizes the pre-existence of the right and declares only that it "shall not be infringed."
>
> As we said in *United States v. Cruikshank* …[t]his is not a right granted by the Constitution. Neither is it in any manner dependent upon that instrument for its existence. The second amendment declares that it shall not be infringed ...."[1]

10. The 'inherent right of self-defense' has been central to the Second Amendment right.[2] "Self-defense had little to do with the right's codification; it was the *central component* of the right itself." *Heller*, at 599 (emphasis supplied).

11. The Second Amendment right of "the people…unambiguously refers to all members of the political community, not an unspecified subset." *Heller*, at 580.

> " '[T]he people' seems to have been a term of art employed in select parts of the Constitution .... [Its uses] sugges[t] that 'the people' protected by the Fourth Amendment, and by the First and Second Amendments, and to whom rights and powers are reserved in the Ninth and Tenth Amendments, refers to a class of persons who are part of a national community or who have otherwise developed sufficient connection with this country to be considered part of that community."

*Heller*, 554 U.S. at 580 quoting *United States v. Verdugo–Urquidez*, 494 U.S. 259, 265 (1990).

12. The Fourteenth Amendment provides, in pertinent part: No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws. U.S. Const. amend. XIV.

---

[1] *Heller*, at 592 (emphasis supplied) quoting, *Cruikshank*, supra.
[2] *Heller*, at 628.

13. The Second Amendment presumptively protects the right to possess and carry all weapons in common use for self-defense. *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 28 (2022) ("even though the Second Amendment's definition of 'arms' is fixed according to its historical understanding, that general definition covers modern instruments that facilitate armed self-defense") citing, *Caetano v. Massachusetts*, 577 U.S. 411, 411–412 (2016) (per curiam) (stun guns).

14. Handguns are 'bearable arms' protected within the scope of the Second Amendment. *Heller,* 554 U.S. at 628 (recognizing handguns to be "an entire class of 'arms' that is overwhelmingly chosen by American society for that lawful purpose [self-defense].").

15. In *Bruen*, the Supreme Court reiterated the text, history, and tradition standard of reviewing Second Amendment challenges, consistent with *Heller*, *McDonald*[3], and *Caetano*.[4]

16. Flatly rejecting 'interest balancing,' the *Bruen* Court laid out a clear path to determine the constitutionality of government regulations affecting the Second Amendment: "We reiterate that the standard for applying the Second Amendment is as follows:

> "When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct.
>
> The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'"

*Bruen*, 597 U.S. at 17. ("In sum, the Courts of Appeals' second step is inconsistent with *Heller*'s historical approach and its rejection of means-end scrutiny.") (emphasis added) (citation omitted).

---

[3] *McDonald v. Chicago*, 561 U.S. 742 (2010).
[4] "But *Heller* and *McDonald* do not support applying means-end scrutiny in the Second Amendment context. Instead, the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Bruen*, 597 U.S. at 17.

17. Where later history contradicts what the text says, the text controls. *Bruen*, 597 U.S. at 36.

***Supreme Court Precedent Rejecting 'Discretion' in the Context of Second Amendment Rights***

18. Relying on text, history, and tradition, the Supreme Court decisions in *Heller* and *McDonald* rejected the use of discretion in the context of Second Amendment rights.[5,6]

19. Likewise, the *Bruen* Court rebuked the use of discretionary and subjective factors in firearms regulation, affirmatively rejecting licensing regimes "like New York's" that "require[e] the appraisal of facts, the exercise of judgment, and the formation of an opinion…" *Bruen*, 597 U.S. at 38 n. 9.

20. The Supreme Court conditioned the continued existence of 'may-issue' licensing regimes like New York on the State's transformation to restricting licensing officials to "only narrow, objective, and definite standards." *Ibid.*

21. Likewise, Justice Kavanaugh's concurrence (joined by the Chief Justice) cautioned the 6 outlier 'may issue' states, of which New York is a member, that their continued implementation was dependent upon a transition to objective criteria:

> "Going forward, therefore, the 43 States that employ objective shall-issue licensing regimes for carrying handguns for self-defense may continue to do so.
>
> Likewise, the 6 States including New York potentially affected by today's decision may continue to require licenses for carrying handguns for self-

---

[5] "The very enumeration of the [Second Amendment] right takes out of the hands of government - even the Third Branch of Government - the power to decide on a case-by-case basis whether the right is really worth insisting upon. A constitutional guarantee subject to future judges' assessments of its usefulness is no constitutional guarantee at all. Constitutional rights are enshrined with the scope they were understood to have when the people adopted them, whether or not future legislatures or (yes) even future judges think that scope too broad." *D.C. v. Heller*, 554 U.S. 570, 634-35 (2008).
[6] *McDonald*, at 790-91 (2010) (rejecting Justice Breyer's idea that incorporation of the 14th Amendment "will require judges to assess the costs and benefits of firearms restrictions and thus to make difficult empirical judgments in an area in which they lack expertise. As we have noted, while his opinion in Heller recommended an interest-balancing test, the Court specifically rejected that suggestion.").

5

defense so long as those States employ objective licensing requirements like those used by the 43 shall-issue States."

*Bruen*, 597 U.S. at 80.

22. Justice Kavanaugh and the Chief Justice opined that New York's discretionary licensing scheme is "unusual" and "constitutionally problematic", in part, because it grants open-ended discretion to licensing officials. *Id.* at 79.

***Post-Bruen Narrowing of the "Moral Character" Factor for Handgun Licensing***

23. In 2022, New York State enacted the Concealed Carry Improvement Act (CCIA) which, among other regulations, substantially narrowed the "moral character" requirement to issue a handgun license.  Penal Law § 400.00(1)(b).

24. Post-CCIA, licensing officers only have a modicum of discretion under § 400.00(1)(b) to make a determination of an applicant's "good moral character," which is limited to denying the applications of 'dangerous' individuals.

***Supreme Court Rejects Denying Firearm Rights of Those Considered "Not Responsible"***

25. In *United States v. Rahimi*, 144 S. Ct. 1889, 1903 (2024) "not a single Member of the Court adopt[ed]" the government's theory that the Second Amendment allows disarmament of anyone who is simply "not responsible." *Rahimi*, 144 S. Ct. at 1944.

## MATERIAL FACTS

26. Zachary Giambalvo is a citizen of the United States and a resident of Suffolk County, New York.

27. Mr. Giambalvo  is part of 'the People' for whom the Second Amendment was codified.

28. Mr. Giambalvo has no disqualifiers to the possession, purchase, receipt, or transfer of firearms[7] under state or federal law.

29. Mr. Giambalvo owns long guns, which he purchased through a federal firearms licensee (FFL/gun store) after being subjected to, and passing, federal background checks through the National Instant Criminal Background Check System (NICS).

30. Under New York State General Business Law § 898, every[8] "sale, exchange or disposal" of a handgun, shotgun, and/or rifle must be conducted through an FFL/gun store and only after the individual passes a NICS background check.[9]

31. Zachary Giambalvo, age 40, is married, a father, and owns two residential properties.

32. Mr. Giambalvo is a federally licensed mortgage loan officer who is subject to annual background checks.

33. Nothing in Mr. Giambalvo's background disqualifies him from possessing firearms – whether under state law or federal law.

34. Mr. Giambalvo has passed every NICS background check he has undergone in connection with the transfer of firearms.

35. In 2022, Mr. Giambalvo applied to the Suffolk County Police Commissioner, the statutory licensing officer assigned to his jurisdiction in Suffolk County, for a New York State pistol license.

---

[7] The term "firearm" as used herein refers to handguns and long guns collectively.
[8] Except "immediate family", which is defined as "spouses, domestic partners, children and step-children." See, GBL § 898.
[9] Upon completion of such background check, the FFL/gun store "shall complete a document, the form of which shall be approved by the superintendent of state police, that identifies and confirms that such check was performed." *Id.*

36. Over a year-and-a-half later, by letter dated January 23, 2024, Komorowski denied Mr. Giambalvo's application for a pistol permit [Ex. 1].[10]

37. The grounds relied on by Komorowski to foreclose Mr. Giambalvo's ability to lawfully possess handguns were:

- Failure to notify the pistol license office of the receipt of two summonses on December 14, 2023;
- Failure to meet the "good moral character" requirement; and
- "Good cause" to deny Mr. Giambalvo's license application.

[Ex. 1].

38. The two summonses received by Mr. Giambalvo in December 2023 were traffic infractions.

39. Penal Law § 400.00 contains no requirement that an applicant disclose traffic infractions as part of the licensing process.

40. Traffic infractions and/or summonses are not a basis for denying a license issued under § 400.00.

41. There is no National historical tradition to disarming individuals because they have incurred minor infractions, like traffic summonses.

42. The "good moral character" requirement under § 400.00(1)(b) is a proxy for 'dangerousness.'

43. Nothing in Mr. Giambalvo's application supports a finding that, at the time of his application, he posed a danger to himself or another person.

44. There is no factual basis for Komorowski's disarmament of Mr. Giambalvo as a 'dangerous' person.

---

[10] Penal Law § 400.00(4-b) requires determinations on licensing applications to be made within six (6) months.

8

45. Mr. Giambalvo has never been convicted of a violent crime.

46. Mr. Giambalvo has never been adjudicated as a violent person.

47. The "good cause" to deny factor was repealed from § 400.00(1)(g) when the Concealed Carry Improvement act (CCIA) was enacted in 2022.

48. "Good cause" is no longer a factor under Penal Law § 400.00(1) to deny a handgun license application.

49. The repealed "good cause" factor, like the "proper cause" factor stricken by *Bruen*, is a subjective, unconstitutional basis to prevent an individual from possessing handguns.

50. Komorowski's denial of Mr. Giambalvo's handgun license application is an absolute bar to his right to purchase and possess handguns in his home for home protection.

51. The denial of Mr. Giambalvo's handgun license application violates his Second and Fourteenth Amendment rights.

***Suffolk County Policy***

52. The Suffolk County Police Department Licensing Bureau publishes a website informing the public of the Suffolk County policies concerning the licensing of firearms.

53. The SCPD website informs, under "Additional Reasons for Denial" on page 4, that the "lack of an 'automatic bar' in your background does not guarantee the issuance or renewal of a pistol license. There are many other factors that are considered in the investigation into an individual's qualification to possess a pistol license" [Ex. 2].

54. The Website further informs that, "other than the above referenced automatic bars include, but are not limited to:

   1. Having had a pistol license revoked in the last five years.

   2. Falsification of any part of the application or accompanying paperwork.

9

    3. The concealment or omission of any information during the application process.

    4. A lack of truthfulness on the application and any accompanying paperwork.

    5. If the director of community services or his or her designee has made a report pursuant to section 9.46 of the Mental Hygiene Law indicating that the applicant, or a member of his/her household is likely to engage in conduct that would result in serious harm to self or others.

    6. Lack of good moral character.

    7. Other good cause."

[Ex. 2 at p. 4].

55. Mr. Giambalvo has suffered, and continues to suffer, the deprivation of guaranteed individual rights that are presumptively protected by the Second and Fourteenth Amendments.

56. Mr. Giambalvo has suffered an injury-in-fact, to wit, the absolute barrier to conduct covered by the plain text of the Second Amendment.

57. Mr. Giambalvo will continue to suffer such injury-in-fact without the relief requested herein.

58. Mr. Giambalvo seeks to hold Defendants personally liable for the violations of his constitutional rights through, *inter alia*, an award of presumed nominal and compensatory monetary damages.

**AS AND FOR A FIRST CAUSE OF ACTION**

59. Repeats and realleges paragraphs "1" through and including "58."

60. Under the theory that Defendants violated the plaintiff's Second and Fourteenth Amendment rights. 42 U.S.C. § 1983.

WHEREFORE, the plaintiff respectfully requests that this Court issue a Judgment and Order:

- Declaring that the "good cause" factor implemented by Defendants to deny firearms license applications violates the Second Amendment and permanently enjoining all Defendants from continuing to enforce it;

- Declaring that Defendants' denial of the plaintiff's application for a New York State pistol license violated his Second and Fourteenth Amendment rights;

- Declaring that the plaintiff is a prevailing party under 42 U.S.C. § 1988;

- Awarding nominal damages to the plaintiff for the presumed violation of his constitutional rights;

- Awarding garden variety compensatory damages to the plaintiff;

- Awarding punitive damages as against defendant Komorowski;

- Awarding statutory attorney's fees to the plaintiff pursuant to 42 U.S.C. § 1988;

- Awarding costs and disbursements to the plaintiff; and

- Awarding such other, further, and different relief as this Court may deem just and proper.

Dated: August 30, 2024
       Scarsdale, New York

                            THE BELLANTONI LAW FIRM, PLLC
                            *Attorneys for Plaintiff*

                By:   *Amy L. Bellantoni*
                            Amy L. Bellantoni, Esq.
                            2 Overhill Road, Suite 400
                            Scarsdale, New York 10583
                            abell@bellantoni-law.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
ZACHARY GIAMBALVO,

                            Plaintiff,                    Case No.: 24 Civ.

    -against-

                                                        **DECLARATION OF**
SUFFOLK COUNTY, New York, ROBERT         **ZACHARY GIAMBALVO**
WARING, in his official capacity, MICHAEL
KOMOROWSKI, Individually,

                            Defendants.
------------------------------------------------------------------x

       ZACHARY GIAMBALVO, declares pursuant to 28 U.S.C. § 1746 that:

       1.      I am the plaintiff in the above-captioned matter. I make this Declaration of my own personal knowledge and if called as a witness, I could and would testify competently to the truth of the matters set forth herein.

       2.      I have reviewed the Verified Complaint in this matter, the factual allegations of which are true and accurate to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: August 27, 2024                                _____
                                                              Zachary Giambalvo